PACIFIC TRIAL ATTORNEYS,
A Professional Corporation
Scott J. Ferrell, State Bar No. 202094
sferrell@pacifictrialattorneys.com
David W. Reid, Bar No. 267382
dreid@pacifictrialattorneys.com
4100 Newport Place, Suite 800
Newport Beach, California  92660
Telephone:  949-706-6464
Facsimile:  949-706-6469

*Attorneys for Plaintiff Carl's Jr. Restaurants LLC*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL'S JR. RESTAURANTS LLC, | CASE NO. 2:17-cv-1913 |
| Plaintiff, | |
| vs. | COMPLAINT FOR SERVICE MARK INFRINGEMENT, UNFAIR COMPETITION, DECLARATORY JUDGMENT AND BREACH OF CONTRACT |
| FRONTERA STAR FOODS, LLC, a Texas Limited Liability Company, MEXTE HOLDINGS, LLC, a Texas Limited Liability Company, INVERSIONES MEXTE, S. de. R.L. C.V., a Mexican limited liability corporation, JUAN MANUEL ALVARADO ERRASTI, GONZALO RUIZ WILLIS, CLAUDIA ORTIZ SALINAS, and JUAN ANTONIO GARZA MOUREY, | |
| Defendants. | |

This is an action for breach of contract arising out of the defendants' failure to comply with the terms of their franchise agreements with the plaintiff before and after the termination of that agreement, for declaratory judgment that the franchise agreement has terminated, and for service mark infringement and unfair competition arising out of the defendants' continued unauthorized operation of

their restaurants after the termination of their franchise agreements.  The plaintiff seeks a declaratory judgment, its damages, and preliminary and permanent injunctive relief.

The defendant, Frontera Star Foods, LLC ("Frontera"), and its direct and indirect owners, defendants Mexte Holdings, LLC, Inversiones Mexte S. de R.L. C.V., Juan Manuel Alvarado Errasti, Gonzalo Ruiz Willia, Claudia Ortiz Salinas, and Juan Antonio Garza Moury (collectively, the "Guarantors") operated six CARL'S JR. quick service restaurants in southern Texas under service marks licensed by plaintiff Carl's Jr. Restaurants LLC ("CJR"), the franchisor of the CARL'S JR. restaurant system.   In 2015, the defendants began failing to pay royalties and advertising fund fees due to CJR related to their operation of the restaurants.  Because the defendants failed to cure these defaults after CJR notified them of the defaults, CJR had the right to, and did, terminate their franchise agreements.

Despite the termination of their franchise agreement and their rights to use the CARL'S JR. proprietary marks and operating system, the defendants have continued to operate their formerly-licensed restaurants under the CARL'S JR. service marks, are holding themselves out to the public as legitimate, licensed members of the CARL'S JR. franchise system, and are selling hamburgers and other menu items which they are falsely representing as genuine and authentic CARL'S JR. menu items.  The defendants' continued operation of their restaurants under the CARL'S JR. marks poses a threat to the goodwill of the CARL'S JR. restaurant system as a whole.  Accordingly, CJR seeks injunctive relief to protect its goodwill, its other franchisees and consumers, as well as declaratory and monetary relief.

## THE PARTIES

1.    Plaintiff Carl's Jr. Restaurants LLC ("CJR") is a Delaware limited liability company with its principal place of business in Carpinteria, California.

2.     The sole member of CJR is Carl's Jr. Funding LLC ("CJF").  CJF's sole member is Carl's Jr. SPV Guarantor LLC ("SPV").  SPV's sole member is, Carl Karcher Enterprises LLC ("CK").  CK's sole member is CKE Restaurants Holdings, Inc. ("CKR").  CJF, SPV, and CK are all Delaware limited liability companies, and CKR is a Delaware corporation.  CJF, SPV, CK, and CKR all have their principal places of business in Carpinteria, California.

3.     Defendant Frontera Star Foods, LLC ("Frontera") is a Texas limited liability company with its principal place of business in McAllen, Texas.

4.     Defendant Mexte Holdings, LLC ("Mexte") is a Texas limited liability company with its principal place of business in McAllen, Texas.  On information and belief, Mexte is the sole member of Frontera.

5.     Defendant Inversiones Mexte, S. de R.L. C.V. ("Inversiones") is a Mexican variable capital limited liability corporation with its principal place of business in Tampico, Mexico.  On information and belief, Inversiones is the sole member of Mexte.

6.     On information and belief, defendant Juan Manuel Alvarado Errasti ("Errasti") is a citizen of Mexico, resides in Mexico, is a member of Inversiones, and is a manager of Mexte and Frontera.

7.     On information and belief, defendant Gonzalo Ruiz Willis ("Willis") is a citizen of Mexico, resides in Mexico, is a member of Inversiones, and is a manager of Mexte.

8.     On information and belief, defendant Claudia Ortiz Salinas ("Salinas") is a citizen of Mexico, resides in Mexico, is a member of Inversiones, and is a manager of Mexte.

9.     On information and belief, defendant Juan Antonio Garza Mourey ("Mourey") is a citizen of Mexico, resides in the State of Texas, is a member of Inversiones, and is a manager of Mexte and Frontera.

/ / /

## JURISDICTION AND VENUE

10.   This is a civil action arising under the Lanham Act, 15 U.S.C. § 1051 et seq., and the contracts between the parties.

11.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, 1338, 1367, and 2201-02 and 15 U.S.C. §§ 1116 and 1121.

12.   Venue in this Court is proper pursuant to 28 U.S.C. § 1391(a) and (b) because a substantial part of the events or omissions giving rise to these claims occurred in this District and pursuant to the parties contracts in which they agreed that any litigation between them would be brought in this District.

## THE CARL'S JR. RESTAURANT SYSTEM

13.   CJR's predecessor in interest, Carl Karcher Enterprises, Inc. ("CKE"), was the franchisor of the CARL'S JR. franchise system prior to 2013.  CKE owned the federally-registered service mark CARL'S JR. and other marks (the "CARL'S JR. Marks") and licensed others to use the CARL'S JR. Marks in connection with the operation of quick service restaurants.

14.   In April 2013, a company affiliated with CJR acquired the assets of CKE, including all right, title and interest in the CARL'S JR. Marks and all franchise agreements licensing others to use those Marks.  Subsequently, the affiliated company assigned all of CKE's franchise agreements to CJR and assigned all rights to the CARL'S JR. Marks to CJR.

15.   CJR has the exclusive right to operate and license others to operate ice quick-service restaurants using the CARL'S JR. Marks.  Franchised CARL'S JR. restaurants are operated in accordance with CJR's business and operating procedures offering distinctive breakfast, lunch and dinner products, featuring charbroiled 100% Black Angus Thickburger sandwiches, Hand-Breaded Chicken Tenders, Made from Scratch Biscuits, and other related quick-serve menu items, to the public ("CARL'S JR. Products").  The CARL'S JR. Marks have come to

identify, in the public mind, these distinctive products and services made available in licensed CARL'S JR. restaurants.

16.    The CARL'S JR. Marks include the following service marks registered in the United States Patent and Trademark Office:

| Trademark | U.S. Reg. No. | Registration Date | Goods and Services |
|---|---|---|---|
|  * | 1,631,819 | 01/15/91 | Beer, soft drinks and fruit juices, for consumption on or off the premises in Int'l Class 32. |
|  * | 1,383,339 | 02/18/86 | Paper napkins, paper bags, food wrappers, and paper place mats in Int'l Class 16. Disposable coffee cups, paper cups, and disposable food containers in Int'l Class 21. |
|  * | 1,297,845 | 09/25/84 | French Fried Onion Rings, French Fried Potatoes, Hash Browned Potatoes, Cooked Sausage, Cooked Bacon, Soups, Chili Con Carne with Beans, Specially Cooked Eggs and Omelettes, Milk, Fruit Jellies and Jams, Salad Dressings, for Consumption On or Off the Premises in Int'l Class 29. Specially Prepared Sandwiches-Namely, Hamburger Sandwiches, Steak Sandwiches, Roast Beef Sandwiches, Chicken Sandwiches, Fish Sandwiches, Specially Prepared Breakfast Sandwiches Consisting of Sausage or Bacon and Eggs, Hot Dog Sandwiches, Specially Prepared Meat Burritos, Milk Shakes, Pancakes, Toasted Breads, English Muffins, |

COMPLAINT FOR SERVICE MARK INFRINGEMENT, UNFAIR COMPETITION, DECLARATORY JUDGMENT AND BREACH OF CONTRACT

| Trademark | U.S. Reg. No. | Registration Date | Goods and Services |
|---|---|---|---|
| | | | Mustard, Ketchup, Sugar, Coffee, Hot Cocoa, and Tea, for Consumption On or Off the Premises in Int'l Class 30. |
|  * | 1,151,330 | 04/14/81 | Restaurant services in Int'l Class 42. |
|  * | 2,220,433 | 01/26/99 | Restaurant services in Int'l Class 42. |
|  * | 2,290,206 | 11/02/99 | Restaurant services in Int'l Class 42. |
|  * | 2,288,997 | 10/26/99 | Restaurant services in Int'l Class 42. |
| CARL'S JR.* | 1,400,272 | 07/08/86 | Paper napkins, paper bags, food wrappers, and paper place mats in Int'l Class 16. Disposable coffee cups, paper cups, and disposable food containers in Int'l Class 21. |
| CARL'S JR.* | 901,315 | 10/20/70 | Restaurant services in Int'l Class 42. |
| HAPPY STAR* | 1,084,351 | 01/31/78 | Restaurant services featuring a children's hamburger in Int'l Class 42. |
|  * | 3,524,587 | 10/28/08 | Restaurant services in Int'l Class 43. |
|  * | 3,550,634 | 12/23/08 | Restaurant services in Int'l Class 43. |
|  * | 3,807,406 | 06/22/10 | Restaurant services in Int'l Class 43. |

| Trademark | U.S. Reg. No. | Registration Date | Goods and Services |
|---|---|---|---|
|  * | 1,689,454 | 05/26/92 | Restaurant services in Int'l Class 42. |
|  * | 2,846,557 | 05/25/04 | Restaurant services in Int'l Class 43. |
|  * | 2,924,101 | 02/01/05 | Restaurant services in Int'l Class 43. |
| GREEN BURRITO* | 3,015,454 | 11/15/05 | Restaurant services in Int'l Class 43. |
| GREEN BURRITO* | 3,526,233 | 11/04/08 | Food items for consumption on or off the premises, namely, chile relleno, chile verde, grilled fish, grilled shrimp, tortilla soup, menudo, shredded beef known as carne asada, shredded pork known as carnitas, and grilled chicken in Int'l Class 29. Food items for consumption on or off the premises, namely, burritos, tacos, tostadas, quesadillas, tamales, chimichangas, enchiladas, fajitas, Mexican style meat pies known as tortas, nachos, taquitos, flautas, rice, corn chips, flour-based chips, taco chips, hard taco shells, tortilla chips, gorditas, churros, flan, corn cakes, salsa, cheese sauces, tomato-based sauces and seasonings in Int'l Class 30. |
|  | 4,243,218 | 11/13/12 | Restaurant services in Int'l Class 43. |

| Trademark | U.S. Reg. No. | Registration Date | Goods and Services |
|---|---|---|---|
| **GREEN BURRITO** | 4,422,597 | 10/22/13 | Food items for consumption on or off the premises, namely, tortas, chile relleno, chile verde, grilled fish, grilled shrimp, tortilla soup, menudo, shredded beef known as carne asada, shredded pork known as carnitas, grilled chicken, steak, ground beef, burritos, tacos, nachos, quesadillas, chips, guacamole, and grilled or barbecued meats wrapped in a tortilla alone or in combination with other fruits, vegetables, cheese, and/or salsas in Int'l Class 30. Restaurant services in Int'l Class 43. |

Each of these registrations is valid and fully enforceable. The registrations for the Marks designated with an asterisk are also incontestable.

17.    In addition to using the CARL'S JR. Marks, franchised CARL'S JR. restaurants are operated in association with CJR's distinctive trade dress and in accordance with detailed standards, specifications and methods relating to sources of supply, preparation of CARL'S JR. Products, required menu items, recipes, uniforms, cleanliness requirements, and virtually all other elements relating to the operation of a quick service restaurant (the "CARL'S JR. System").

18.    The standards, specifications and methods of the CARL'S JR. System are set forth in CJR's confidential and proprietary operations manuals, copies of which are provided to all CJR franchisees (the "Manual"). The Manual includes detailed standards, specifications, instructions, requirements, methods and procedures for management and operation of a franchised CARL'S JR. restaurant, including information regarding selection, purchase, storage, preparation, packaging, ingredients, recipes, service and sale of all CARL'S JR. Products sold

at the restaurant; management and employee training; marketing, advertising and sales promotions; maintenance and repair of the building, grounds, equipment, graphics, signs, interior and exterior décor items, fixtures and furnishings at the restaurant; employee dress attire and appearance standards; menu concept and graphics; and accounting, bookkeeping, records retention and other business systems, procedures and operations.

<u>**THE AGREEMENTS BETWEEN THE PARTIES**</u>

19.    CKE and Frontera entered into a development agreement (the "Development Agreement") dated December 21, 2009, pursuant to which Frontera was granted the right to develop CARL'S JR. franchised restaurants in the counties of Webb, Zapata, Starr, Cameron, Hidalgo, and Willacy in Texas, pursuant to a development schedule agreed upon by the parties.  A copy of the Development Agreement is attached as Exhibit 1.  The Development Agreement was assigned to CJR in April 2013.

20.    Prior to opening any franchised CARL'S JR. restaurant developed pursuant to the Development Agreement, Frontera was required to enter into a CARL'S JR. franchise agreement for the location and franchised restaurant to be developed.  Exh. 1 § 1.B.  Failure by Frontera to meet the deadlines set forth in the development schedule constituted a default of the Development Agreement for which CKE could terminate the Development Agreement upon notice to Frontera.  Exh. 1 § 14.A.(1)-(2).  Similarly, if Frontera defaulted under any other agreement between CKE and failed to cure that default, CJR had the right to terminate the Development Agreement.  <u>Id</u>. § 14.A.(11).

21.    CJR (and its predecessor CKE) and Frontera entered into the following franchise agreements (the "Franchise Agreements") governing the operation of a CARL'S JR. restaurants at the identified locations (the "Restaurants"):

/ / /

| Restaurant Number | Date of Franchise Agreement | Franchised Restaurant Location | Expiration Date of Franchise Agreement |
|---|---|---|---|
| 1101534/7565 | Nov. 5, 2010 | 10519 McPherson Road, Laredo, TX 78045-6495 | September 28, 2025 |
| 1101915/8139 | May 10, 2011 | 900 S Jackson Road, McAllen, TX 78503 | May 9, 2031 |
| 1102122/8326 | Feb. 26, 2013 | 1408 W Expressway 83, Weslaco, TX 75896 | February 25, 2033 |
| 1102197/8401 | Nov. 26, 2013 | 4250 N Expressway 77, Brownsville, TX 78526 | November 25, 2033 |
| 1102284/8484 | Sept. 30, 2014 | 1448 Duranta Avenue, Alamo, TX 78516 | September 29, 2034 |
| 1102296/8496 | Jan. 27, 2015 | 1704 W University Drive, Edinburg, TX 78539 | January 26, 2035 |

The terms of the Franchise Agreements for units 7565 and 8139 are identical in their material terms; the terms of the Franchise Agreements for the remaining four units are also identical in their material terms.  A true and correct copy of the Franchise Agreement for the Laredo, Texas (unit 7565) and the Edinburg, Texas (unit 8496) Restaurants are attached as Exhibit 2 and 3, respectively.

22.    Concurrent with Frontera's execution of the each Franchise Agreement, Mexte, Inversiones, Errasti, Willis, Salinas,  and  Mourey ("Guarantors") each executed a Guarantee and Assumption of Franchisee's Obligations ("Franchise Guarantees") personally guaranteeing of all of Frontera's respective obligations under the Franchise Agreements, including the obligation to punctually pay all money owed to CJR.  Pursuant to those Franchise Guarantees (which are identical in their material terms), Guarantors also agreed that they would each be personally liable for Frontera's breach of the Franchise Agreements.

A true and correct copy of the Franchise Guarantee for the Edinburg, Texas Franchise (unit 8496) Agreement is attached as Exhibit 4. In addition, Guarantors executed a Continuing Guarantee in March 2014 ("Continuing Guarantee"), reaffirming their prior guarantees under the agreements executed as of March 21, 2014. A true and correct copy of the Continuing Guarantee is attached as Exhibit 5. The Franchise Guarantees and the Continuing Guarantee are collectively referred to as the "Guarantees."

23. Pursuant to Section 3 of the Franchise Agreements, Frontera has certain payment obligations to CJR, including royalty and advertising fund fees. Exhs. 2 & 3 §§ 3.B-3.C. The amount of these fees is calculated based on Frontera's gross sales at the Restaurants, which Frontera is required to report on a weekly basis. Id. § 3.D. Payments from Frontera are to be made weekly to CJR. Id. § 3.E. Frontera is also required to pay interest if its payments are overdue, and reimburse CJR for any fees it incurs in collecting unpaid amounts, including reasonable attorneys' fees. Id. §§ 3.F, 3.H.

24. Pursuant to Section 18.B.(2) of the Franchisee Agreements, if Frontera fails to pay any royalty, advertising fund or other fees owed to CJR when such monies are due and payable, Frontera must make payment in full, within ten days after receiving a written notice from of default from CJR. If Frontera fails to pay the amount due within that time period, CJR may terminate the Franchise Agreement for failure to pay. Exhs. 2 & 3 § 18.B.(2).

**FRONTERA'S DEFAULTS UNDER THE FRANCHISE AGREEMENTS**

25. At least as early as November 2015, Frontera began to be delinquent in paying fees due to CJR pursuant to Section 3 of the Franchise Agreements. CJR attempted to work with Frontera to devise a suitable arrangement for Frontera to pay the amounts owed and come current on its payment obligations, but Frontera continued to fail to pay amounts owed to CJR and failed to come current on those obligations.

26.　On August 5, 2016, CJR sent Frontera a Notice of Default (the "Notice of Default") by Federal Express and email, with a duplicate copy by regular mail.　A true and correct copy of the Notice of Default is attached as Exhibit 6.　The Notice of Default notified Frontera and the Guarantors that they were in default under the Franchise Agreements for failing to pay amounts owed to CJR.　CJR demanded that the defendants pay the past-due amount of $479,169.45, within ten days of receipt of the Notice.

27.　The defendants failed to cure their monetary default within ten days of receiving the Notice of Default or at any time thereafter.

28.　On August 26, 2016, CJR sent Frontera and Guarantors a Notice of Termination (the "Termination Notice") by Federal Express and email, with a duplicate copy by regular mail.　A true and correct copy of the Termination Notice is attached as Exhibit 7.　The Termination Notice notified the defendants that CJR was terminating the Franchise Agreements, effective August 26, 2016, as a result of the defendants' failure to cure the defaults identified in the Notice of Default.　In the Notice of Termination, CJR granted Frontera a temporary license to continue operating the Restaurants as CARL'S JR. restaurants until October 1, 2016 (the "Temporary License").　During the term of the Temporary License, CJR planned to assess whether it would exercise its contractual right to take assignment of the Restaurants or assign that right to a third-party to take over operation of the Restaurants.

29.　Subsequently, CJR and Frontera began to negotiate terms for a workout arrangement through which Frontera could cure its monetary defaults and ultimately obtain reinstatement of the terminated Franchise Agreements.

30.　During those negotiations, CJR granted Frontera a temporary license (the "McAllen License") to open a new franchised CARL'S JR. restaurant located at 4411 North 10th Street, McAllen, Texas (the "McAllen Restaurant") because that restaurant had been under construction prior to CJR issuing the Notice of Default

COMPLAINT FOR SERVICE MARK INFRINGEMENT, UNFAIR COMPETITION, DECLARATORY JUDGMENT AND BREACH OF CONTRACT

and the Notice of Termination. Under the McAllen License, Frontera was obligated to operate the McAllen Restaurant under the same terms as the Franchise Agreement for the Edinburg, Texas Restaurant (unit 8496).  CJR reserved the right to terminate the McAllen License if Frontera failed to negotiate a payment plan for and pay the amounts owed under the Franchise Agreements.

31.     Thereafter, CJR agreed to extend the Temporary License to December 9, 2016, and again to January 30, 2017, to afford Frontera an opportunity to finalize a workout agreement that CJR had proposed and to which Frontera had indicated it would agree.   After Frontera failed to meet the January 30, 2017 deadline, in a letter dated February 6, 2017 (the "Final Extension Demand"), CJR notified Frontera that it was granting one final extension of the Temporary License to March 10, 2017 to afford Frontera time to wind down its business and provide CJR with financial information necessary for CJR to determine whether or not to exercise its contractual options to take assignment of the Restaurants.  A copy of the Final Extension Demand is attached as Exhibit 8.  CJR reserved the right to terminate the Temporary License prior to March 10, 2017 if Frontera failed to provide the information requested by CJR.

32.     Thereafter, Frontera failed to provide the information that CJR had requested, and failed to pay the amounts due under the Franchise Agreements.

33.     On February 24, 2017, CJR, by counsel, notified Frontera that it was terminating the Temporary License and the McAllen License, effective March 1, 2017, if Frontera failed to contact CJR and provide the requested information by February 28, 2017 (the "Final Demand").  A true and correct copy of the Final Demand is attached as Exhibit 9.  CJR also demanded that the defendants immediately pay the estimated past-due amount of $746,799.56 identified in the Final Extension Demand.

34.     On March 1, 2017, CJR sent Frontera and Guarantors a Notice of Default and Termination of the Development Agreement (the "DA Termination

Notice") by Federal Express and email, with a duplicate copy by regular mail.  A true and correct copy of the DA Termination Notice is attached as Exhibit 10.  The DA Termination Notice notified the defendants that CJR was terminating the Development Agreement, effective immediately, as a result of (a) Frontera's failure to comply with Development Schedule and (b) Frontera's uncured defaults under the Franchise Agreements.

35.    Frontera failed to respond to the Final Demand or to provide the information CJR had requested, and the defendants failed to pay the amounts owed to CJR.  As a result, the Temporary License and the McAllen License terminated on March 1, 2017.  On March 2, 2017, CJR sent Frontera and Guarantors a letter confirming the termination of the Temporary License and McAllen License on March 1, 2017, and demanding that the defendants cease and desist from all further use of the CARL'S JR. Marks, comply with the post-termination contractual obligations in the Franchise Agreements and the McAllen License, and pay all amounts owed CJR.  A true and correct copy of the March 2, 2017 letter is attached as Exhibit 11.

## THE DEFENDANTS' BREACH OF THE POST-TERMINATION PROVISIONS OF THE FRANCHISE AGREEMENTS AND UNAUTHORIZED USE OF THE CARL'S JR. MARKS

36.    Upon termination, Frontera expressly agreed in the Franchise Agreements and the McAllen License that it would immediately discontinue all use of the CARL'S JR. Marks, the CARL'S JR. System, and all confidential and proprietary methods, procedures, and techniques associated with the CARL'S JR. System; return the Manual and all other materials containing confidential or proprietary information to CJR; and remove the CARL'S JR. Marks, trade dress and other distinctive features of the CARL'S JR. System from the Restaurants. Exhs. 2 & 3 §§ 19.A.-H.

/ / /

37.    Frontera also agreed that it would pay all amounts owed to CJR and its affiliates.  In addition, for four of the six Restaurants, Frontera agreed to pay CJR the net present value of the royalty fee Frontera would have paid during the balance of the term remaining on the four Franchise Agreements for those Restaurants (calculated using the average weekly royalty fee for the prior 52 weeks for each Restaurant).  Exh. 3 § 19.B.

38.    Frontera also covenanted that for a period of two years after termination it would not own, operate, or have any interest in any quick-service restaurant business or restaurant business that features or derives more than 20% of its sales from hamburger sandwiches, chicken sandwiches, breakfast sandwiches, or any other entrée item that is part of the CARL'S JR. System within a two mile radius of any of the Restaurants or the McAllen Restaurant or any other CARL'S JR. restaurant.  Exhs. 2 & 3 §§ 17.C.(2)(c) and 19.D.  Guarantors expressly agreed in the Guarantees to be bound by this covenant.  Exh. 4 § 1.

39.    As a consequence of the valid termination of the Franchise Agreement, Frontera is required to abide by these post-termination obligations.  Guarantors are also obliged to comply with their obligations under the Gurarantees, including undertaking Frontera's obligations.  However, the defendants have failed to comply with their post-termination contractual obligations and continued to operate using the CARL'S JR. Marks and trade dress and the CARL'S JR. System.

40.    Despite the termination of the Franchise Agreement (and their receipt of the March 2, 2017 letter), on information and belief the defendants are continuing to operate the formerly-franchised Restaurants and the McAllen Restaurant using the CARL'S JR. Marks and CARL'S JR. System and to offer products and services at the Restaurants that are the same or similar to the CARL'S JR. Products and the services that were offered under the Franchise Agreements and McAllen License.  The defendants are holding themselves out to the public as

franchisees of the CARL'S JR. franchise system and are representing that the products they are selling are CARL'S JR. Products.  The defendants are using the confidential and proprietary information provided to them as a CARL'S JR. franchisee, including information about the ingredients, manufacturing and preparation of CARL'S JR. Products, to make and sell food from their formerly-licensed locations.

41.    The defendants' failure to abide by the post-termination obligations of the Franchise Agreements and McAllen License and continued use of the CARL'S JR. Marks, the CARL'S JR. System and other confidential and proprietary information belonging to CJR in connection with the products and services the defendants are offering at the site of the formerly-franchised Restaurants and the McAllen Restaurant is causing irreparable harm to CJR.

## COUNT ONE

**(Declaratory Judgment:  Termination of the Franchise Agreements, the Temporary License, the McAllen License, and the Development Agreement)**

42.    CJR realleges Paragraphs 1-41 of this Complaint.

43.    Frontera has repeatedly defaulted in its monetary obligations under the Franchise Agreements.

44.    CJR has provided Frontera with written notice of its monetary defaults.

45.    The defendants failed to cure Frontera's defaults within ten days after receiving the Notice of Default or at any time thereafter.

46.    Because the defendants failed to cure Frontera's defaults within the specified cure period (or at any time thereafter), the Franchise Agreements have terminated, pursuant to the Termination Notice.

47.    CJR reserved the right to terminate the Temporary License at any time, and notified Frontera that it would terminate the Temporary License on

March 1, 2017 if Frontera failed to meet certain conditions. Because Frontera failed to meet those conditions, the Temporary License has terminated.

48.     CJR reserved the right to terminate the McAllen License if Frontera failed to pay the amounts owed under the Franchise Agreements. CJR notified Frontera that the McAllen License would terminate on March 1, 2017 if Frontera failed to meet certain conditions. Because Frontera failed to meet those conditions, the McAllen License has terminated.

49.     Frontera has failed to meet the deadlines set forth in the Development Schedule and is in default of the Franchise Agreements. CJR has the right to terminate the Development Agreement if Frontera failed to meet the deadlines in the Development Schedule or defaulted under any other agreement with CJR. CJR provided notice Frontera that it was in default of the Development Agreement and that CJR was terminating that Agreement. As a result, the Development Agreement has terminated, pursuant to the DA Termination Notice.

50.     An actual and justiciable controversy exists between CJR and Frontera regarding the termination of the Franchise Agreements, the Temporary License, the McAllen License, and the Development Agreement because CJR asserts that the Franchise Agreements, the Temporary License, the McAllen License, and the Development Agreement have terminated as a result of Frontera's defaults and failure to cure those defaults. Frontera disputes the terminations by continuing to operate the Restaurants as a CARL'S JR. Restaurants.

51.     Pursuant to 28 U.S.C. §§ 2201 and 2202, CJR seeks a declaratory judgment that the Franchise Agreements, the Temporary License, the McAllen License and the Development Agreement have validly terminated in accordance with the provisions of those Agreements.

### COUNT TWO

**(Federal Trademark and Service Mark Infringement:  15 U.S.C. § 1114)**

52.     CJR realleges Paragraphs 1-51 of this Complaint.

53.    Frontera continued use of the CARL'S JR. Marks without authorization or license from CJR is likely to cause confusion in the public mind concerning the source, affiliation, or sponsorship of goods and services being offered under the CARL'S JR. Marks.

54.    Consumers are likely to believe, contrary to fact, that Frontera is an authorized licensee of CJR, that the Restaurants and the McAllen Restaurant are legitimate members of the CARL'S JR. franchise system, and that the hamburgers, chicken and chicken sandwiches, breakfast sandwiches and other products sold by Frontera are genuine and authentic CARL'S JR. Products.

55.    Frontera is willfully, intentionally, and knowingly using trademarks, service marks, and designations that are identical to, substantially indistinguishable from, or confusingly similar to the CARL'S JR. Marks in violation of section 32 of the Lanham Act, 15 U.S.C. § 1114.

56.    Guarantors are either causing Frontera to engage in this infringing activity or are engaging in this infringing activity themselves and are therefore contributory infringers in violation of the Lanham Act.

57.    The defendants' conduct is causing irreparable injury to CJR's reputation and goodwill, the CARL'S JR. Marks and the CARL'S JR. franchise system, which injury will continued unabated unless enjoined by this Court.

58.    In addition, the defendants' conduct is causing monetary damage to CJR in an amount to be proven at trial.

## COUNT THREE

### (Federal Unfair Competition:  15 U.S.C. § 1125)

59.    CJR realleges Paragraphs 1-58 of this Complaint.

60.    Frontera's unauthorized use of the CARL'S JR. Marks and trade dress, holding itself out as a duly licensed member of the CARL'S JR. franchise system, and representing that its hamburgers, chicken and chicken sandwiches, breakfast sandwiches and other products are genuine and authentic CARL'S JR.

Products constitute false designation of origin, false advertising, false or misleading descriptions of fact, and false or misleading representations of fact, which are likely to cause confusion or mistake, or to deceive as to the affiliation, connection, or association between Frontera and CJR, or as to the origin, sponsorship, or approval of the goods or services being offered by Frontera, or as to CJR's approval of Frontera's commercial activities.

61.    Frontera's conduct violates section 43(a) of the Lanham Act, 15 U.S.C. § 1125 (a).

62.    Guarantors are either causing Frontera to engage in this activity or are engaging in the activity themselves and are therefore liable to the same extent as Frontera under the Lanham Act.

63.    The defendants' conduct is causing irreparable injury to CJR's reputation and goodwill, the CARL'S JR. Marks and the CARL'S JR. franchise system, which injury will continued unabated unless enjoined by this Court.

64.    In addition, the defendants' conduct is causing monetary damage to CJR, in an amount to be proven at trial.

## COUNT FOUR

### (Breach of Contract – Amounts Owed Under Franchise Agreements and McAllen License)

65.    CJR realleges Paragraphs 1-64 of this Complaint.

66.    Frontera's failure to pay royalty fees, advertising fund fees, other fees and interest on past-due amounts for the Restaurants constitutes a breach of the Franchise Agreements and the McAllen License.

67.    Frontera's default and material breach of the Franchise Agreements, and the termination of those Agreements, has deprived CJR of the future royalty fees that Frontera would have been obligated to pay under the Franchise Agreements for the remaining terms of those Agreements, and which Frontera is

obligated to pay as lost future royalties under Section 19.B. of the Franchise Agreements.

68.    CJR has been damaged by Frontera's breach of the Franchise Agreements and McAllen License through its failure to pay amounts due through February 27, 2017, in an amount to be proved at trial, but not less than $746,799.56 **[update]**, plus interest.

69.    In addition, CJR has been damaged by Frontera's breach of the Franchise Agreements as lost future royalties (including the amounts due under Section 19.B. of four of the six Franchise Agreements) in an amount to be proved at trial, plus interest.

70.    As guarantors of Frontera's obligations under the Franchise Agreements, Guarantors are jointly and severally liable for Frontera's breach.

## COUNT FIVE

### (Breach of Contract - Post-Termination Obligations)

71.    CJR realleges Paragraphs 1-70 of this Complaint.

72.    Despite the valid termination of the Franchise Agreements, the Temporary License, and the McAllen License, Frontera has failed to de-identify the Restaurants and the McAllen Restaurant.  Instead, Frontera has continued to operate the Restaurants and the McAllen Restaurant utilizing the CARL'S JR. Marks and trade dress and the CARL'S JR. System in a manner likely to cause confusion or to deceive and which falsely suggests an association or connection with the CARL'S JR. franchise system in violation of Section 19 of the Franchise Agreements.

73.    Frontera has further breached Section 19 of the Franchise Agreements by failing to surrender to CJR the Manual and other materials relating to the formerly-licensed businesses.

74.    Frontera has also breached Section 17 and 19.D. of the Franchise Agreements by continuing after termination of the Franchise Agreements to

operate quick service restaurants from the locations of the formerly-franchised Restaurants, selling hamburgers, chicken sandwiches, breakfast sandwiches, and other items that Frontera sold at its formerly franchised Restaurants.

75. As guarantor of Frontera's obligations under the Franchise Agreements, Guarantors are jointly and severally liable for Frontera's breaches of the post-termination obligations under the Franchise Agreements. In addition, Guarantors are jointly and severally liable for Frontera's breach of Section 17 of the Franchise Agreements, and directly liable for breach of the Guarantees for aiding Frontera in operating businesses in violation of the post-termination covenant against competition.

76. The conduct set forth herein has caused and continues to cause irreparable injury and damage to CJR's reputation and goodwill and the CARL'S JR. franchise system, which injury will continue unabated unless enjoined by this Court.

77. In addition, CJR has sustained actual damages, costs, and attorneys' fees as a result of the defendants' breach of their contractual post-termination obligations in an amount to be proved at trial.

## COUNT SIX

### (Common Law Service Mark Infringement)

78. CJR realleges Paragraphs 1-77 of this Complaint.

79. The CARL'S JR. Marks are distinctive and have developed a secondary meaning in the public mind in that consumers have come to know and recognize the CARL'S JR. Marks as identifying the particular hamburgers, sandwiches and other food products and the operation of quick service restaurants by CJR and its franchisees. The CARL'S JR. Marks have become known by the public as indicative of the goods and services provided by CJR and its franchisees at CARL'S JR. restaurants.

/ / /

80. The public is likely to be confused, deceived or otherwise manipulated by Frontera's unauthorized use of the CARL'S JR. Marks.  Therefore, Frontera's use of the CARL'S JR. Marks without right, license, or authorization constitutes common law service mark infringement.

81. Guarantors are causing Frontera to engage in this infringing activity or are engaging in this infringing activity themselves and are therefore liable to the same extent as Frontera for this infringing activity.

82. The defendants' conduct is causing irreparable injury to CJR's reputation and goodwill, the CARL'S JR. Marks and the CARL'S JR. franchise system, which injury will continue unabated unless enjoined by this Court.

83. In addition, the defendants' conduct is causing monetary damage to CJR, in an amount to be proven at trial.

## COUNT SEVEN

### (Violations of the California Unfair Business Practices Act:

### Cal. Bus. & Prof. Code § 17200 <u>et seq.</u>)

84. CJR realleges Paragraphs 1-83 of this Complaint.

85. CJR has suffered injury in fact and has lost money as a result of the defendants' conduct and meets all of the standing requirements to pursue this claim.

86. The defendants' conduct described above constitutes unfair and deceptive business practices, under California Business & Professions Code § 17200 <u>et seq.</u>, because they are unfair, unlawful, false, misleading, and fraudulent.

87. The defendants' are causing irreparable injury to CJR's reputation and goodwill, the CARL'S JR. Marks and the CARL'S JR. franchise system, which injury will continue unabated unless enjoined by this Court.

/ / /

/ / /

88.     The defendants have wrongfully obtained moneys from CJR as a result of their unlawful, unfair, and deceptive business practices, in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, CJR demands entry of judgment in its favor awarding the following relief:

1.     Declaring that the Franchise Agreements, the Temporary License, the McAllen License, and the Development Agreement have terminated and that the termination of those Agreements was lawful and valid;

2.     Awarding CJR the past-due amounts owed under the Franchise Agreements and the McAllen License, in the amount to be proved at trial but not less than $746,799.56, plus interest, under the terms of the Franchise Agreements the and McAllen License, through the date of entry of judgment;

3.     Awarding CJR the amounts owed under the Franchise Agreements for lost future royalties in an amount to be determined at trial, plus interest, under the terms of the Franchise Agreements, through the date of entry of judgement;

4.     Preliminarily and permanently enjoining the defendants, and all those acting in concert or privity with any or all of them, including any of their agents, servants, employees, and attorneys, from:

(a)     using the CARL'S JR. Marks or the CARL'S JR. System, in any manner whatsoever, including, without limitation, in connection with the advertising, promotion or sale of any product or service, and including, without limitation, on all signs, furniture, fixtures, equipment, décor, advertising materials, stationary, forms, and any other articles that display the CARL'S JR. Marks or utilize CJR's trade dress;

(b)     operating any business under the name CARL'S JR. or operating or doing business under any name or mark, or in any manner that is likely to give the public the impression that any business in which the defendants have any interest or

connection is licensed by CJR or otherwise associated with the CARL'S JR. franchise system;

(c)     failing to make any changes and alterations to their formerly-licensed premises required to de-identify the Restaurants and the McAllen Restaurant;

(d)     failing to turn over to CJR the Manual and all other confidential and proprietary materials relating to the CARL'S JR. System;

(e)     committing any other act that infringes the CARL'S JR. Marks or that otherwise unfairly competes with CJR or the CARL'S JR. franchise system; and

(f)     diverting or attempting to divert any business or customer, or potential business or customer, of any CARL'S JR. Restaurant to any competitor;

(g)     knowingly employing or seeking to employ any person then employed by CJR or any franchisee of CJR as a shift leader or higher, or otherwise inducing such person to leave his or her employment; and

(h)     owning, maintaining, operating, engaging in, granting a franchise to, advising, helping, making loans to, leasing property to or having any interest in any restaurant business (i) whose sales of hamburger sandwiches, chicken sandwiches, breakfast sandwiches or any other type of entrée item designated by CJR as part of the CARL'S JR. System are reasonably during a daypart likely to account collectively for 20% or more of the restaurant's sales of all entrée items sold during that daypart; (ii) that features or promotes in its advertising hamburger sandwiches, chicken sandwiches, breakfast sandwiches, and any other entrée item of a type designated by CJR as part of the System; or (iii) that operates in a quick-service format (with or without table service) for a two year period within a 2 mile radius of the Restaurants and the McAllen Restaurant or a 2 mile radius of any CARL'S JR.. Restaurant.

5.     Ordering the defendants to file with the Court and serve on counsel for CJR, within fifteen (15) calendar days after service of any injunction issued

1   herein, a written report setting forth in detail, under oath, the manner and form in

2   which it has complied with such injunction;

3        6.      Awarding CJR, pursuant to 15 U.S.C. §1117, (a) the defendants'

4   profits, (b) CJR's damages, and (c) the costs of the action;

5        7.      Awarding CJR treble damages and attorneys' fees pursuant to 15

6   U.S.C. § 1117(a) and (b);

7        8.      Ordering specific performance against the defendants of the post-

8   termination obligations in the Franchise Agreements;

9        9.      Awarding CJR restitution of all moneys obtained by the defendants as

10  a result of their conduct;

11       10.     Awarding CJR its costs in prosecuting these claims, including its

12  reasonable attorneys' fees incurred, in accordance with the Franchise Agreements

13  and applicable law; and

14       11.     Such other and further relief as the Court may deem appropriate.

15  Dated:  March 9, 2017              PACIFIC TRIAL ATTORNEYS

16                                     A Professional Corporation

17

18                                By:____/s/Scott J. Ferrell_____

19                                     Scott J. Ferrell

20                                     *Attorneys for Plaintiff*
                                       *Carl's Jr. Restaurants LLC*

21

22

23

24

25

26

27

28

COMPLAINT FOR SERVICE MARK INFRINGEMENT, UNFAIR COMPETITION, DECLARATORY JUDGMENT AND
BREACH OF CONTRACT